There are four broad categories of claims in the complaint, the third amended complaint against Allnurses and the estate of Brian Short. Those broad categories are defamation, contract, fraud, including consumer fraud, and what we call alternative liability. I'd like to start with the contract claims. The district court was wrong to dismiss the three contract claims. The judge ruled that there was insufficient pleadings, that they were not plausible. This was an argument that was not raised by the movement. Like the summary judgment ruling, which I'll discuss later, the plaintiff was not on notice. There was no argument made, both as to summary judgment or as to insufficiency of pleadings. The movement was largely, almost entirely, basing their motion on the Communications Decency Act. Allnurses argued below the CDA. Now, the court said that it was not plausible that the contract claim was pled. And this clearly is in disregard of the complaint and the exhibits. In the complaint, the third amended complaint, and the exhibits, it shows how the terms of service state, these terms of service are your agreement with us. And by becoming a participant in the allnurses.com and online community, you agree to them and abide by them the same way as if you had a paper agreement with us. And then there was a click through, meaning above where the registrant, to become a member of this online community, could become a registered user, there was this button. And above that was the statement that I just, there was another statement, a click through that says, your participation implies full acceptance with our terms of service. That was a button that the registrants have to click. The point is that there's no question on the face of the complaint and the exhibits that there was an agreement that was being entered into. Now, most if not all the cases that are cited with respect to these online agreements are being objected to as an agreement from the point of the user. The user is saying, we didn't know about the terms, but that's not what's happening here. Here, the website is, well, the website didn't even claim this in their motion papers. The district judge, Sue Esponte, raised this argument about insufficiency of pleading. The movement was well aware. It didn't bring it up. It was not argued. East Coast Test Prep never had an opportunity to argue it until now. And even so, insufficient because of the limitations. So normally, as I said, it's the user who's objecting. In this case, the district judge is basically saying the website is objecting to its own terms of service, that it's not plausible that there is an agreement in this case. And that just belies the facts, I'm sorry, the allegations and the exhibits. Also, if there was, let's assume that that was an agreement or a contract, where did you sufficiently allege a breach? We definitely allege the breach. The judge said we didn't allege the formation of the contract. As I explained, there was evidence that the parties intended to be bound. The consideration would be that my client, through their employees that registered both three different usernames, posted. That's a value to the website. The whole way the website works, it's a commercial enterprise. And it's commercial speech that we're talking about. So it gets much less scrutiny. This is not political speech. What was the breach that was alleged? OK, so the breach was there are several terms of service that say, you are free to disagree. We have lively debate. You are free to debate. And what happened here is there was negative derogatory comments posted about East Coast Test Prep, including that they were under federal investigation, which the allegations are they were not. That's false. And there were other. What is the allegation by Russ? That's the post by Russ, correct? Russ and another poster who got 12B2 dismissed from the case. So those two posters both said East Coast Test Prep is under federal investigation. But the other one is out of the case now. Out of the case. We're only on Russ now. We're only on Russ, except, Your Honors, that we are not just claiming defamation. East Coast is saying there is a whole scheme here. And it is to attract, to induce negative comments to build traffic, including rating number two on Google. When you put in Achieve Test Prep on Google, on the complaint allegations, the number two result is Achieve Test Prep. But getting back to Your Honors' question. So the breach of terms are that all nurses provides a place where they, as part of their terms of service, say you are free to disagree and debate. My client attempted to do that, attempted to correct the record and got cut off. Well, what about the, if it is a contract, what about the term that says that all nurses is or to sort of shut folks off, stop the conversation under their discretion? How can that be a breach when that was in the contract that you're asserting was in existence? If you violate the policies, they have the right to do that if you're not polite, if you make allegations against other entities. Are those connected? If you do this, then we can kick you out? Or is it this is what you're permitted to do so long as you are civil, and then separately, for under our own discretion, we can just shut you off? I believe, Your Honor, that it is a condition. It's tied to if you don't abide by these conditions. But even so, it says you are free to disagree. Now, part of that is contract. Part of that is the consumer fraud that they're holding themselves out to be a fair and impartial website when, in fact, the allegations are that they favor their own advertisers, one of them being Excelsior College, which is an advertiser and a competitor to my client. So there are people, it is alleged, that all nurses induces, including on their website, they say that they sometimes provide payment for content. So when you add all of these things up, it is plausible. It is believable that there are others, John Doe posters, who are being solicited, either induced or paid. Now, all nurses hides under a cloak of claim First Amendment rights and anonymity. So we don't know. We don't have direct evidence. We only have circumstantial evidence. But the pleading stage, the standard, doesn't require that we have to show that we are probably going to win. The record, as it stands now, doesn't support a probable. And it doesn't have to under Iqbal and Twombly. Only has to show plausible. And we've put forth a sufficient connection between people like Just Beachy Nurse that was admittedly a moderator and posted on the website at the same time. Was Just Beachy Nurse a moderator? Yes. I thought that was Dukes. Dukes was a senior moderator. And Your Honor, importantly, and I'll close with this because I want to leave some time for rebuttal. In June and July of 2015, the late founder of this corporation filed declarations and said there is no connection, no relation between Just Beachy Nurse and all nurses. A year and a half later, as a result of motion to compel, two motions compel, in order 243, ECF 243, it's not in the addendum. It was a magistrate judge order. The court said you have to answer these questions and interrogatories that you gave boilerplate responses to all nurses. One of them, for instance, was interrogatory one, subpart two. Do you know the identities of any of the posters? Objection. How is that objectionable? Well, it wasn't. It wasn't a First Amendment objection. There was a question, provide us the identities, and they objected based on First Amendment anonymity. But this was a second part of that question. Do you know the identity of anyone? They objected. And as a result of our motion to compel, you want to know why this case took so long. Why are we still in the early stages before discovery has happened? This is why. A year and a half to get an answer of a question, do you know the identity? And as a result of that motion to compel, they had to amend their answers and interrogatories, and lo and behold, one of the John Does that we suspected had a relationship with all nurses does. Now, the other reason discovery is so important, the founder is not alive anymore. There's no one to go to with all the knowledge in this case. And so, actually, I'll close with this. One of the parts of the ruling, the district judge said, after two years of trying, and I have no reason to believe that what all nurses says isn't true, but this is a reason to believe what all nurses says isn't true. And we want to take the deposition of Just Beachy Nurse. We want his or her identity, not because we want to name him or her to the lawsuit. That's over. We gave up on that claim. He or she is a material witness to the operations of all nurses. I'll reserve the balance of my time. Thank you. Very well. Thank you for your argument. Mr. Redl, we'll hear from you. Let's see. We have two lawyers arguing here. Refresh us on who's arguing for whom while we have divided argument. I am here on behalf of the Appalachian Defendants All Nurses Incorporated and David R. Smits as the Administrator of the Estate of Brian Short. Mr. Leventhal is here on behalf of Ms. Russ. Very well. And we will be dividing our time nine minutes and three minutes as the intended split. Well, I think it's 12 and three. 12 and three, you're right. My warning was nine. Sorry, Your Honor. You may proceed. Good morning, and if it may please the court, as I mentioned, I'm John Redl on behalf of All Nurses and David Smits as the Administrator of the Estate of Brian Short. We're here today because of a multi-year litigation onslaught that was commenced based on the comments of five posters. And that's really important to remember that. These posters, which again are only five, and a subset of their comments, a limited number of comments, are the entirety of the universe that this case occupies. Notwithstanding the conclusory allegations of large-scale operation, it's simply about those five posters and a handful of comments. Of those posters, the statements of three of the five have been ruled as a matter of law to be non-defamatory. That ruling is unchallenged. Quite simply, there is no claim that could be made based on those actions because what they did was proper. The remaining two posters have made it unequivocally clear in their responses to the case that they have nothing to do with All Nurses. Now, while the court hasn't affirmatively adjudicated what's happened with their statements and whether they are or are not defamatory, the point is they've made it clear that they have nothing to do with All Nurses, which is gonna be relevant when we discuss the Communications Decency Act. Because of that and because of the current posture of the case, we're left with one poster, Ms. Russ, who's still here. That poster has disavowed any connection to All Nurses. So notwithstanding that limited universe and the complete deficiency in any claim of agency, they have nonetheless, through just mere conclusions, essentially going and pulling the jigs of a claim and said all those things happened. We don't have any evidence that they happened, but just trust us, one through five happened. They're trying to assert that there's something more there. As Chief Judge Tunheim noted, there is nothing there. And I think that what's important here is at the end of the day, even looking at the entirety of this, All Nurses is undisputably a interactive computer service under the Communications Decency Act. No one disputes that fact. The only question is, are they also an information content provider? And again, we're here on one poster's post. And that poster clearly has indicated that they have nothing to do with All Nurses. And what that gets into then is, is there a way, is there an allegation to say that All Nurses is somehow responsible for that content? And the District Court noted, no, there's no way that they're responsible for that content. It's clear it was created by a third party. They had nothing to do with its creation. They're not responsible for the content. Well, as to the contract claims that your opposing counsel spoke of, the District Court did not dismiss those based on the CDA, correct? He set the CDA issue to the side to address the deficiencies in the pleadings. He did, however, note in a couple of points that the types of conduct that they're alleging are a breach of the contract. So for example, editing of content, shaping of a discussion, general management of a website, those are traditional editorial functions that would be covered by the CDA. However, he did not reach that issue. If to the extent that the court here were to take issue with his version of the pleading deficiencies, that CDA issue is still there and has been fully briefed before the District Court and is ripe for decision by this court. I do think it's important to note that the contract claim here, number one, there's absolutely no plausible allegation that East Coast Test Prep and All Nurses are counterparties to a contract. Allegedly, some anonymous posters went to a website, supposedly joined it, and that by doing so, All Nurses is now a counterparty to a contract with some undisclosed principal of these people who are acting in an agency theory that they didn't disclose. There's no way to read the complaint that that's a plausible claim that could... You're saying that it's not plausible that the terms of service is a contract? Is that what you're saying? What I'm saying is that their pleadings are deficient in alleging that it's a contract, A, in just an aggregate, but B, specifically the contract that they're alleging is that All Nurses owes duties to East Coast Test Prep by virtue of the terms of service. They're saying, we have an affirmative duty to police the site on their behalf. Anything that's negative about them, we have to take it down. And the argument is that because somebody who worked for them allegedly joined the website, we've now got a contract with them. That is absolutely implausibly plead. Maybe I read it wrong. I thought it was that by signing up on the terms of service, that the user was engaged in an agreement, and part of that was that if you are civil, you may discuss lively, in a lively debate fashion, the issues related to this topic. I thought that was the contract. The contract is the terms of service as a whole. And the district court noted that the pleadings, again, this is the fourth complaint, that the pleadings were deficient in alleging a contract between the parties to the case. He didn't truly opine on whether or not the All Nurses website's format and structure would allow for the creation of a contract with other parties. What he said is, this complaint, again, the fourth complaint, they didn't get it right this time either. And what I'm saying is in addition to that, even if they had got it right, even if they had shown that they did all the things they needed to do to create a valid contract between the user and All Nurses, there's no way for that contract to lie between East Coast Test Prep and All Nurses. Who is the party complaining of the contract breach? East Coast is saying, you breached the contract with us by not doing something. Even though, as you correctly noted, we reserve almost absolute discretion in the terms of service. So it's not a breach, but there's also not a contract between the named plaintiff who alleges this defamation, which again, every statement that's been ruled on has been ruled to be non-defamatory, and All Nurses as the other party. So back to the CDA issues, and I think it ties into that contract issue, because even if there were a contract here, the analysis that Chief Judge Thunheim does when he sets the CDA to the side references Barnes. And Barnes is a case where an individual had problematic posts, essentially a fake identity was created about them, and they directly reached out to Yahoo. And a representative of Yahoo, I believe it was the VP, specifically reached back out and said, we will do this for you. I will walk down the hallway and take care of it. That contract is what survived under the Barnes case, not any terms of service related claims. And so in this case, even if there were to be a contract claim, the only claim is at best a general supervisory agreement or something which has been specifically disallowed in the cases after Barnes saying, that's just not enough. You don't waive your CDA liability immunity that you have as exercising traditional editorial functions simply by having a general policy to monitor. So we still come back to the CDA in your viewpoint, even though the district, in other words, do you think that we can address the CDA portion of that claim? I do think that this court can address that claim. And I do believe that at the end of the day, the CDA and had the district court gotten through the pleading analysis, I think the district court would have concluded the same thing based on his comments in other areas about the traditional editorial functions of a site like All Nurses. Looking forward, because of the disconnect here, I think it's important that if this court is going to opine on the CDA, that it does look at that standard of when is somebody an information content provider. And as we noted, Jones is essentially the leading case on this point, talking about the material contribution standard, that it's not enough simply to have touched the content or in this case, updated a hyperlink of again, non defamatory comments. But you have to be involved in the creation of what makes the content unlawful. So number one, it's gotta be unlawful, which we don't really have here. And then you have to be involved in its creation. You can't just be involved post hoc and commenting on it, liking it, doing any of the things that are alleged here, you'd actually have to have been involved in creating it. But we do still have Russ, right? That statement by the post by her. We do, but Russ has specifically disavowed any connection to All Nurses and everything she's filed with the court. Which the flip of that would be, you're saying they haven't asserted a sufficient agency between All Nurses and Russ, is that? I think there's two defects, the agency piece and then contribution. Even if Russ was somehow our agent in some unspecified manner, they'd have to also allege that we were involved in soliciting or creating this unlawful content. So like we went to her and said, hey, you should post unlawful things. Even if you were an agent? It would depend on the scope of her agency. And the problem is there is no agency so we can't speculate on that. What's clear is that we have no connection to Ms. Russ. She's made that very clear. We had nothing to do with the post. We had no control over what she wrote. And so the CDA would unquestionably shield All Nurses from that. Did, Dukes is a moderator for All Nurses. So she's an agent of, could be arguably. We did concede that point. Did she make any comments or likes to Russ's post? No, what she did, so she made her own independent comments, which the court analyzed was non-defamatory and that's not been appealed. And then she liked a comment that was also found to be non-defamatory that referenced a previous comment that was found to be non-defamatory. And under the analysis of the plaintiffs, her like of the non-defamatory comment referencing another non-defamatory comment somehow was construed as complete adoption and ratification of all of those, which again is barred by the material contribution standard. And two, converted those non-defamatory statements into defamatory statements. It doesn't actually make any sense. But no, she didn't. And I do want to correct one point. Just Beachy Nurse was at one time a moderator. She was not a moderator at the time of her post. And this is very important because this thread was open for such a long period of time because there were some comments, then there was a lull, then there were some comments, then there was a lull and then there was a flurry of activity. And if you read what the plaintiffs have said, they said she was a moderator at the times of posting in the thread. Not the time she posted in the thread, but at the time that somebody else posted in the thread like a year and a half before she posted. And they would know that because in her signature, she would say moderator if she was a moderator just like Pixie. So it wasn't. Are you saying that there are cases out there that address this idea of just liking something or responding, having some kind of response as to whether that's enough to make it a part of the Here All Nurses website? I think that there's two things. One is the ratification theory was wholesale thrown out by most courts and specifically the Jones Court with the material contribution. So liking wouldn't by definition be a post hoc contribution. You couldn't have been involved in the creation. But I think the district court's analysis of a like and its reference to common sense definitions of it is very clear. Liking does not mean wholesale adoption of it in total. And that's very important, number one. And number two, it would have to require the adoption of a ratification standard that's just simply not here. And with that, I believe my time is up if there are no further questions. Very well, thank you for your argument. Mr. Leventhal, we'll hear from you. Please the court, counsel. I'm here on behalf of Ms. Russ. I am volunteering here as part of the Pro Se Litigant Project of the District of Minnesota. Just have three minutes, so I will be mercifully brief. There are two parts of the appeal on the grant of judgment in favor of Ms. Russ. One is personal jurisdiction. And of course, she was pro se. She raised the issue whether this claim against her in Minnesota violated her due process. She raised that when she was pro se. I raised it once I represented her. I don't want to spend any more time on the personal jurisdiction aspect of the case because I don't think it's warranted unless your honors have questions. I think it's a very strong case that there was no personal jurisdiction over Ms. Russ. Well, I think you should address waiver. That's fine, your honor. As I've said, she raised specifically. Given what she filed before you represented her, was there any waiver? And I would argue strongly that the answer is no. There is a certain indulgence and obviously important indulgence for pro se litigants in our system because they don't know the complexities of our legal system. She raised the issue of violation of due process. As your honors know, the issue of personal jurisdiction is a matter of due process. So yes, she did make filings in the court. She had no information or knowledge of personal jurisdiction. She has no legal training whatsoever. She raised the issue, nevertheless, of due process. So I would submit, your honors, in light of the deference that is given to pro se litigants and the greater. Did you find any authority where this has come up before in the context of jurisdiction? We've got a lot of cases on pro se litigants and prisoner litigation and so forth, but where the question has come up in a jurisdictional situation like this? Honestly, your honor, I can't recall. But what I cited was the sort of general proposition of the liberality given to pro se activities. Well, but this isn't exactly that. That's why I wondered if there's anything more helpful. But I guess not. Well, I would submit that it is exactly that. This was a pro se litigant who raised the issue of due process. What I mean is it's not a question of liberally construing what a plaintiff says to give them the benefit of the doubt about what claim they're raising. The question here is whether by filing things that if a lawyer had filed might have been a waiver, like a counterclaim, she nonetheless avoids waiver because she's pro se. I mean, that's one way to look at the issue. Right, I would say that would be unduly harsh to a pro se litigant to hold them to the standards of lawyers. Well, do you think that the filing of the counterclaim, are you saying it's only because she's pro se that she doesn't waive the jurisdictional issue? Or are you saying that that doesn't waive jurisdiction? No, I would submit that if she had been represented by counsel and brought a counterclaim, she would have waived. Well, that makes it a pretty stark issue. Then we'd have to say she would have waived if a lawyer had done this. But because she's pro se, it's not a waiver. Well, keep in mind, she did raise the due process objection. If she had been represented and raised it in a motion to dismiss as a lack of personal jurisdiction, there would never have been a counterclaim. Well, that's true. It was not construed because it was pro se, as I object to personal jurisdiction. She just said that this violates due process. Did you want to address the transfer issue? I did, Your Honor. And unfortunately, I'm out of time. It's an important issue. So we'll give you a little time to address that. I think it is critically important. And we'll allow Mr. Raven to rebut it. But go ahead. I very much appreciate that, Your Honor. The key point, of course, is that the standard is an abuse of discretion standard. This case, as Mr. Rettel pointed out, has been around, had been around, for an enormous and punishing amount of time and for amended complaints. And what about the fact that the judge thought there was no argument made against transfer? And there's a question whether he really analyzed the issue. What do you say to that? I say that, in fact, he did address the issue, regardless of that. And they raised it in response to an amicus brief. But he said that the court dismissed every claim against every other defendant, and in this case, almost all on the merits. How does that inform the transfer analysis? Because what the court looks at is in the interest of justice. And when you have a case such as this one, where the district court, exercising its discretion, determines that it's unlikely that the case has any merit, then transfer is unwarranted. And this court is bound to respect the discretion of the district court in that decision. If I might make one last. Just on that, is there any authority? I don't remember in the briefs whether what you're really saying there is, even though the court had no jurisdiction over the defendant, the court can analyze the merits of the case in deciding whether to transfer. That's exactly right. Was there any authority that says that? There is. What's your best? Yeah, go ahead. Young versus state government of Oklahoma, 98, federal appendix 760, 10th Circuit, 2004. In that case, the 10th Circuit held that the transfer would not be granted, and was not granted, and affirmed that decision, saying that the complaint was unlikely to have merit. It cited how HAUGHV Booker, 210 at 3rd, 1147, which held a court is authorized to consider the consequences of a transfer by taking a peek at the merits to avoid raising false hopes and wasting judicial resources that would result from transferring a case which is clearly doomed. OK, we'll look at those. What was the last point you wanted to make then? And then we should probably move on to the rebuttal. That's it, Your Honor. Oh, that was it. OK, I thought you said you had one more point. Thank you for your argument. Thank you, Your Honor. I got it. Thank you. Mr. Raven, we'll hear from you in rebuttal. Thank you. May it please the court. Your Honor, I was looking at the terms of service in answer to your question. And on page 830 of the appendix, there's a paragraph that says, terms of service. Although the Constitution of the US guarantees that Congress shall make no law abridging the freedom of speech, allnurses.com, Inc., is not Congress, period. Freedom of speech rights should not extend to allnurses.com, Inc., period. This terms of service guidelines governs behaviors and activities of its members. If you choose not to follow the guidelines agreed to during registration, the result is disabling your account. And there are other instances in the terms of service which link up whatever action they're violating any law, such as defamation. I just want to briefly respond to the transfer. Your honors have pointed out that there was an argument made. This was much more than a peek at the merits. And if any of the defamation claims have merit, it's the ones where the posts were that East Coast Test Prep was under federal investigation when they were not. So I think the Tenth Circuit case is in a posit to this case. Is that what Russ posted? Russ was one of the two posters that said that East Coast Test Prep was under federal investigation. Yes. Our theory of the case does not rely on every statement being actionable. It is true that this court has said the Warren statement, not actionable defamation. The liking, not actionable defamation. Obsolete and redundant, not actionable for defamation. Granted, we didn't appeal that. What we are saying is those negative comments, if they were nonetheless solicited, induced. And this court, in the Johnson versus the Arden case, recognized under the CDA that if, and the court was looking at the Seventh Circuit cases, if the website operator induces or encourages or solicits, then the website is liable. And that's what we're alleging here. I just want to say that this whole bit about standing, which is what Mr. Rettel was talking about, that Mr. Olenek, or East Coast Test Prep, rather, doesn't have standing to make a contract claim, this was not raised below by the movement. We did not have an opportunity to address that again. Their entire theory was CDA. And we addressed that. And then the district judge, on his own, raised these other things. So at the least, it should be remanded on that issue if this court thinks that would be appropriate. And I just want to close with, on the issue of inducement, there, again, there doesn't have to, we don't have to prove probability. We don't even have to prove a material issue and dispute at this point. This is a motion for judgment on the pleading. And all we needed to do was prove plausibility, believability. And when you have the commercial website that makes profit by operating and drawing traffic, and you have allegations where one of the posters was an agent, was a moderator. And we say that we're entitled to test. We shouldn't have to take their word for it. And Mr. Rettel, I was shocked to hear that he's now introducing an oral argument, a fact, alleged fact that Russ is denying any connection. Well, what business does that fact coming from Russ have at this stage? And so we should have the opportunity, like any other litigation, all we want to do is take some depositions, finish our discovery. This case was at the very beginning of discovery. Pleadings got closed. The motion for judgment occurred, despite the district court judge saying after two years of trying, discovery, that passage. Yes, we tried. But most of that discovery was aimed at identity, identification, not for merit. At one point referred to this as sprawling litigation. Is that an unfair characterization? And I suppose you'd say it's irrelevant. We want a chance to go back and do what we should have been. I don't know if sprawling has a legal connotation. Well, it has a pejorative. Yeah, I think it does. How many counts did you bring in your complaint? 17, I think. And we narrowed them down considerably, Your Honor. We didn't bring in. When? What? When? I mean, on appeal. You narrowed them down to how many? You're only appealing some of the 17? Is that what you're saying? Yes. Well, the Lanham Act and state unfair competition, the intentional tortious interference. And we didn't pursue defendants. We're not pursuing defendants. You know, if I may, Judge Thunheim, if I may, apparently had a gut instinct about this case. Maybe he's right. We don't know. We haven't had a chance to take discovery. Clearly, the court did not like this case. Understandable. But that's not the test. And I just ask that this court give my client the opportunity at this early stage to go a little further, to take the discovery, to see if there is a case here or not. But we have made a good faith allegations based on the information that we had, including the payments are made on the website to certain posters. All right, very well. Thank you for your argument.